1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| SHOALWATER BAY INDIAN TRIBE,<br><br>            Plaintiff,<br><br>      v.<br><br>EXXON MOBIL CORPORATION, EXXONMOBIL OIL CORPORATION, BP P.L.C., BP AMERICA INC., CHEVRON CORPORATION, CHEVRON U.S.A. INC., SHELL PLC, SHELL OIL COMPANY, CONOCOPHILLIPS, CONOCOPHILLIPS COMPANY, PHILLIPS 66, and PHILLIPS 66 COMPANY,<br><br>            Defendants. | Case No.<br><br>NOTICE OF REMOVAL<br><br>[Removal from the Superior Court of the State of Washington, King County, Cause No. 23-2-25215-2 SEA]<br><br>Action Filed: February 6, 2024 |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOTICE OF REMOVAL

1    **TO THE CLERK OF THE ABOVE-TITLED COURT AND TO PLAINTIFF SHOALWATER**

2    **BAY INDIAN TRIBE AND ITS COUNSEL OF RECORD:**

3        PLEASE TAKE NOTICE THAT Defendants Chevron Corporation and Chevron U.S.A. Inc.

4    (together, the "Chevron Defendants") remove this action—with reservation of all defenses and rights—

5    from the Superior Court of the State of Washington for King County, Cause No. 23-2-25215-2 SEA,

6    to the United States District Court for the Western District of Washington, pursuant to 28 U.S.C.

7    §§ 1331, 1362, and 1441(a).  All other defendants that have been properly joined and served (collec-

8    tively, "Defendants") have consented to this Notice of Removal.

9        This action is removable because it has been brought by an Indian tribe for alleged damage to

10   tribal lands and natural resources, including those held in trust by the United States, and thus invokes

11   the federal question jurisdiction of this Court.  *See Oneida Indian Nation of N.Y. State v. Oneida Cnty.*,

12   414 U.S. 661, 667 (1974); *Cnty. of Mono v. Liberty Utils. Calpeco Elec., LLC*, 2021 WL 3185478, at

13   *3–5 (C.D. Cal. May 6, 2021).  The suit also implicates federal jurisdiction because it seeks to recoup

14   health care costs that have allegedly been incurred in response to climate change.  *See Acoma Pueblo*

15   *v. Am. Tobacco Co.*, 2001 WL 37125252, at *5–7 (D.N.M. Feb. 20, 2001).  This Court has supple-

16   mental jurisdiction under 28 U.S.C. § 1367(a) over any claims against the properly joined defendants

17   for which it does not have original federal question jurisdiction because they form part of the same case

18   or controversy as those claims over which the Court has original jurisdiction.

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL

1

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................ 3

II.     TIMELINESS OF REMOVAL ................................................................................... 4

III.    SUMMARY OF ALLEGATIONS AND GROUNDS FOR REMOVAL .............................. 4

IV.     THIS ACTION IS REMOVABLE BECAUSE IT IS BROUGHT BY AN INDIAN
        TRIBE FOR ALLEGED DAMAGE TO TRIBAL LAND AND NATURAL
        RESOURCES, INCLUDING THOSE HELD IN TRUST BY THE UNITED
        STATES. ................................................................................................................... 7

V.      THIS ACTION IS ALSO REMOVABLE BECAUSE IT IS BROUGHT BY AN
        INDIAN TRIBE TO RECOVER FOR ALLEGED INCREASED COSTS OF
        HEALTH CARE. ...................................................................................................... 10

VI.     THIS COURT HAS JURISDICTION AND REMOVAL IS PROPER. ............................ 12

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

1    **I.       INTRODUCTION**

2          1.       Oil and gas play a fundamental role in the Nation's economic well-being and national

3    security, and hundreds of millions of Americans rely upon oil and gas products every day.  Plaintiff,

4    an Indian tribe, seeks to hold Defendants—producers and marketers of oil and gas—responsible for

5    global climate change.  Advancing a sweeping theory, Plaintiff accuses Defendants of a "deception

6    campaign" that has purportedly resulted in "devastating climate change impacts to the Shoalwater Bay

7    Tribe," including to "its people and its land."  Compl. ¶¶ 1.1, 1.7.  Plaintiff seeks to hold Defendants

8    liable for alleged "harms to . . . public property" and to "the ability of the Shoalwater Bay Tribe and its

9    citizens to comfortably enjoy life and property," seeking abatement of the "nuisance" supposedly

10   created by Defendants, including through "funding an abatement fund," as well as "joint and several

11   compensatory damages."  *Id.* ¶¶ 5.4, 6.2–6.3.

12         2.       Although the Ninth Circuit has considered similar lawsuits presenting other

13   jurisdictional issues, including *City of Oakland v. BP PLC*, 969 F.3d 895 (9th Cir. 2020), *County of*

14   *San Mateo v. Chevron Corp.*, 32 F.4th 733 (9th Cir. 2022), *City & County of Honolulu v. Sunoco LP*,

15   39 F.4th 1101 (9th Cir. 2022), and *City of Oakland v. BP PLC*, 2023 WL 8179286 (9th Cir. Nov. 27,

16   2023), this case is removable for reasons that those cases did not have occasion to address.

17         3.       Unlike those cases, this suit—along with a nearly identical suit filed by the Makah

18   Indian Tribe in the same court—was brought by an Indian tribe for alleged harms to tribal lands and

19   natural resources.  This fact is a key distinction for purposes of assessing federal jurisdiction because

20   it is well established that federal law governs the "right" of Indian tribes "to sue to protect their

21   possessory interests in their lands," *Swinomish Indian Tribal Cmty. v. BNSF Ry. Co.*, 951 F.3d 1142,

22   1153 (9th Cir. 2020), including "actions brought by Indian tribes for damage to tribal lands," *Begay v.*

23   *Kerr-McGee Corp.*, 499 F. Supp. 1317, 1321 (D. Ariz. 1980).  This suit—which by its own allegations

24   seeks damages for alleged injury to tribal lands and natural resources, including those held in trust by

25   the United States—is squarely within the category of actions governed by federal law and subject to

26   removal to federal court.  Moreover, the Complaint seeks to recoup health care costs that have allegedly

27

28

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

been incurred by the Tribe in response to climate change, for which the United States is responsible under a comprehensive federal scheme, providing an additional basis for removal.

4.     Accordingly, Plaintiff's Complaint should be heard in this federal forum.

## II.     TIMELINESS OF REMOVAL

5.     Plaintiff filed a Complaint against the Chevron Defendants and other named Defendants in the Superior Court of the State of Washington for King County, Cause No. 23-2-25215-2 SEA, on December 20, 2023.  Copies of all process, pleadings, or orders in the possession of the Chevron Defendants are attached as Exhibit 1 to the Declaration of Joshua D. Dick, filed concurrently herewith.

6.     This Notice of Removal is timely under 28 U.S.C. § 1446(b) because it is filed within 30 days after service.  28 U.S.C. § 1446(b).  Chevron U.S.A. Inc. was served on January 17, 2024.  Dick Decl. ¶ 3; *id*. Ex. 1.  All properly joined and served Defendants have consented to removal.  Dick Decl. ¶ 4.  Consent is not required from any Defendant that has not been served.  *See* 28 U.S.C. § 1446(b)(2)(A).[1]

## III.    SUMMARY OF ALLEGATIONS AND GROUNDS FOR REMOVAL

7.     Plaintiff is a "federally-recognized sovereign Native Nation that has occupied the lands and waters along and draining into Willapa Bay . . . in what is now the State of Washington for millennia."  Compl. ¶ 2.1.  The Complaint defines the "Shoalwater Bay Reservation" to include not only Plaintiff's reservation originally established by executive order, but also "lands that the United States holds in trust for the Tribe near and contiguous to the Executive Order Reservation."  *Id.*  "The Tribe brings this action to vindicate its sovereign, proprietary, public trust, and parens patriae rights, to abate a public nuisance, and to recover for injuries to the Tribe's natural resources, property, and public health."  *Id.*

---

[1] In filing this Notice of Removal, the Chevron Defendants, and all other Defendants, do not waive, and expressly preserve, any right, defense, affirmative defense, or objection, including, without limitation, lack of personal jurisdiction, insufficient process, and/or insufficient service of process.  A number of Defendants contend personal jurisdiction in Washington is lacking over them, and these Defendants intend to preserve that defense and move to dismiss for lack of personal jurisdiction at the appropriate time.  *See, e.g.*, *Morris & Co. v. Skandinavia Ins. Co.,* 279 U.S. 405, 409 (1929) (removal to federal court does not waive right to object to personal jurisdiction).

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

8.      Plaintiff's novel theory of relief is that Defendants engaged in an alleged campaign of "disinformation" that has increased demand for, and the production, combustion, and use of, oil and gas.  Compl. ¶¶ 1.1, 1.4, 1.6.  Plaintiff alleges this increase, in turn, has "driven up greenhouse gas emissions" and "accelerated global warming," bringing about "climate change impacts" to Plaintiff and its reservation.  *Id.* ¶ 1.1.  As a result of these climate impacts, Plaintiff alleges that it "faces existential threats to its people and its land." *Id.* ¶ 1.7.  These asserted impacts to the Shoalwater Bay Reservation include, among other things, rising sea levels and increased rainfall, extreme heat, wildfire, and drought. *Id.* ¶¶ 1.7, 4.184, 4.187.  Specifically, the Complaint alleges "significant and accelerating sea-level rise," and an increase in the "mean sea level of the Shoalwater Bay Reservation," threatening "residents" and "essential governmental infrastructure"; "more extreme weather events in and on the Shoalwater Bay Reservation"; and "more destructive wildfires." *Id.* ¶ 4.187.  Plaintiff's alleged injuries include "destruction of Tribal natural resources," "destruction of Tribal-owned or -operated facilities and property," "increased costs," and "loss of habitat and species" *Id.* ¶¶ 4.184, 4.186.  Plaintiff alleges that, because of sea-level rise, lower-lying lands are unsafe for occupancy and Plaintiff's members must "relocat[e] . . . to higher ground." *Id.* ¶ 4.188.  The Complaint also asserts Plaintiff has "already incurred significant costs" in relocating "governmental infrastructures, service facilities, and housing," and in "rerouting reservation roads." *Id.* ¶ 4.187.  Plaintiff also alleges that global climate change increases the "the incidence of serious health risks like respiratory distress, cancer, chronic obstructive pulmonary disease ('COPD'), and cardiovascular disease among Shoalwater Bay citizens." *Id.* at ¶ 4.187.  And Plaintiff claims damages arising out of harms to "public health," *id.* ¶¶ 2.1, 4.1, 4.111, 4.119, 4.186, 5.4, 5.15, and to "assets essential to community health," *id.* ¶ 4.186, as well as "increased costs associated with public health impacts," *id.*

9.      Based on this theory, Plaintiff advances claims against Defendants for public nuisance and failure to warn. *Id.* ¶¶ 5.1–5.15.  As noted, Plaintiff alleges Defendants have interfered with its right and the rights of its citizens "to comfortably enjoy life and property," *id.* ¶ 5.4, and seeks an abatement fund "to be managed by the Tribe to remediate and adapt its Reservation lands, natural

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

resources, and infrastructure," other unspecified equitable relief, joint and several compensatory damages, and more. *Id.* ¶¶ 6.1–6.6.

10.    Multiple Defendants will deny that any Washington court has personal jurisdiction over them, and any Defendants properly before this Court will deny any liability as to Plaintiff's claims. Defendants expressly reserve all rights in this regard.  For purposes of meeting the jurisdictional requirements for removal only, however, the Chevron Defendants submit that removal is proper on the grounds discussed below.

11.    Defendants may remove this action because Plaintiff, as an Indian tribe, seeks to recover damages for alleged injury to tribal lands and natural resources, including those held in trust by the United States, over which Plaintiff maintains a possessory right and property interest.  Federal law governs, and completely preempts, such state-law claims.  Plaintiff's claims thus "aris[e] under" federal law and are accordingly removable.  28 U.S.C. §§ 1331, 1362, 1441(a); *see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005).

12.    Plaintiff's claims are additionally removable because Plaintiff seeks to recover increased health care costs allegedly incurred by Plaintiff as a result of the effects of global climate change.  But the provision of tribal health care is a federal responsibility, subject to a comprehensive federal scheme of funding and provision.  The analysis of this question is thus an inherently federal inquiry arising under federal law.

13.    Defendants will address these grounds in additional detail below.  Should Plaintiff challenge this Court's jurisdiction, Defendants reserve the right to elaborate further on these grounds and will not be limited to the specific articulations in this Notice.  *Cf., e.g.*, *Betzner v. Boeing Co.*, 910 F.3d 1010, 1014–16 (7th Cir. 2018) (holding district court erred by requiring evidentiary submissions by defendant in the notice of removal, in advance of briefing on a motion to remand).  Indeed, the Supreme Court has upheld removal where jurisdictional facts required to support the removal were found in later-filed affidavits rather than in the notice of removal.  *See, e.g.*, *Yarnevic v. Brink's, Inc.*, 102 F.3d 753, 755 (4th Cir. 1996) (citing *Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969)).  "[T]he Court

NOTICE OF REMOVAL

6

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

1   is not limited to an examination of the original [removal] petition in determining jurisdictional ques-

2   tions." *Giangola v. Walt Disney World Co.*, 753 F. Supp. 148, 153 n.5 (D.N.J. 1990) (citation and

3   internal quotation marks omitted); *see generally Dart Cherokee Basin Operating Co., LLC v. Owens*,

4   574 U.S. 81, 83–84 (2014) (discussing requirement that notice of removal need contain only a short

5   and plain statement of basis for removal, to be elaborated on if a remand motion is filed).

6       14.    Defendants do not waive, and expressly reserve, all rights to submit additional argu-

7   ments and evidence to show that this action is properly removable on the grounds discussed herein.

8   **IV.  THIS ACTION IS REMOVABLE BECAUSE IT IS BROUGHT BY AN INDIAN
       TRIBE FOR ALLEGED DAMAGE TO TRIBAL LAND AND NATURAL RE-**
9   **SOURCES, INCLUDING THOSE HELD IN TRUST BY THE UNITED STATES.**

10      15.    Removal is appropriate on the ground that Plaintiff's claims necessarily arise under fed-

11  eral common law because they involve the Plaintiff tribe's possessory rights to, and property interests

12  in, tribal lands and natural resources; that is, Plaintiff has brought an action for damage to and interfer-

13  ence with its occupancy and use of tribal lands and resources, to protect its possessory rights in those

14  lands and resources. *See, e.g.*, *Cnty. of Mono v. Liberty Utilities Calpeco Electric, LLC*, 2021 WL

15  3185478, at *4 (C.D. Cal. May 6, 2021) (denying remand where municipal plaintiff asserted claims for

16  injury to tribal land from wildfire). *United States v. Milner*, 583 F.3d 1174, 1182 (9th Cir. 2009)

17  ("Federal common law governs an action for trespass on Indian lands."); *Gila River Indian Cmty. v.*

18  *Cranford*, 459 F. Supp. 3d 1246, 1255 & n.13 (D. Ariz. 2020) ("Just as federal law provides the source

19  and defines the scope of tribal power, federal law provides the source and defines the extent of tribal

20  property interests.  By virtue of being federally derived, then, tribal property rights raise a substantial

21  issue of federal law."); *Round Valley Indian Housing Auth. v. Hunter*, 907 F. Supp. 1343, 1348 (N.D.

22  Cal. Oct. 24, 1995) ("An action involving an Indian tribe's . . . possessory rights of trust land would,

23  unquestionably, create a question of federal common law." (emphasis omitted)); *see also Mescalero*

24  *Apache Tribe v. Burgett Floral Co.*, 503 F.2d 336, 337 (10th Cir. 1974) (finding federal jurisdiction

25  over claim for damages from destruction of trees on reservation); *Pueblo of Isleta v. Universal Con-*

26  *structors, Inc.*, 570 F.2d 300, 301–02 (10th Cir. 1978) (finding federal jurisdiction over claim of dam-

27  ages to houses on reservation from blasting activities outside reservation).

28

NOTICE OF REMOVAL

7

16.     "[F]ederal . . . common law" governs claims by Indian tribes "for violation of their possessory rights" to tribal land, creating federal question jurisdiction.  *Oneida Cnty. v. Oneida Indian Nation of N.Y. State*, 470 U.S. 226, 236 (1985) ("*Oneida II*") (quotation marks omitted); *see also Oneida Indian Nation of N.Y. State v. Oneida Cnty.*, 414 U.S. 661, 667 (1974) ("*Oneida I*") ("Given the nature and source of the possessory rights of Indian tribes to their aboriginal lands, particularly when confirmed by treaty, it is plain that the complaint asserted a controversy arising under the Constitution, laws, or treaties of the United States within the meaning of both" 28 U.S.C. § 1331 and 28 U.S.C. § 1362.); *Swinomish Indian Tribal Cmty.*, 951 F.3d at 1153 ("Tribes have a federal common law right to sue to protect their possessory interests in their lands.").

17.     The uniquely federal interests in tribal trust land derive not only from the status of the United States as owner and trustee, but also from the federal government's sovereign prerogatives to pursue its policy goals.  As the Supreme Court has explained: "[T]he Government exercises its carefully delimited trust responsibilities in a sovereign capacity to implement national policy respecting the Indian tribes."  *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 178 (2011).

18.     "Where a tribe seeks damages from a non-Indian 'for trespass on [tribal] land, for restoration of the land to its original state *or for irreparable injury to the land*' . . .  federal jurisdiction exists because the Indian right of possession itself is at stake."  *Cnty. of Mono*, 2021 WL 3185478, at *3–4 (emphasis added) (quoting *Owens Valley Indian Housing Auth. v. Turner*, 185 F.3d 1029, 1033 n.4 (9th Cir. 1999), *rehearing granted en banc and opinion withdrawn as moot*, 192 F.3d 1330 (9th Cir. 1999)); *see also Begay*, 499 F. Supp. at 1321 ("The rationale of *Oneida* has been extended to include actions brought by Indian tribes for trespass and to actions brought by Indian tribes for damage to tribal lands. . . . The common thread of these cases is an action by an Indian tribe to protect the tribe's possessory rights in tribal lands." (internal citations omitted)); *Pueblo of Isleta*, 570 F.2d at 301–02.

19.     Thus, where, as here, an Indian tribe brings an action for alleged damages to tribal lands and natural resources, federal jurisdiction exists and removal is proper.  In *County of Mono*, plaintiffs, including an Indian tribe, sued the defendants in California state court for damages to tribal lands

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

caused by a wildfire, alleging inverse condemnation, negligence, nuisance, premises liability, trespass, and California statutory claims.  2021 WL 3185478, at *1.  Defendants removed, arguing plaintiffs' claims arose under federal law because they alleged a present right to possession of Indian tribal lands. *Id.* at *3.  Plaintiffs moved to remand, asserting they did "not seek redress over the actual disposition of the tribal trust lands," but instead sought "to recover for damages to the land."  *Id.*  The court held that federal removal jurisdiction was proper, because the complaint sought "damages from [d]efendants to tribal land caused by [d]efendants' alleged trespass and negligence," and thus the "Indian right of possession" was at stake.  *Id.* at *4–5 (stating defendants "properly removed the case to federal court because the Complaint seeks damages for trespass upon and injury to tribal trust lands," and that the court "ha[d] federal question jurisdiction over actions such as this one, in which a Native American tribe seeks damages for trespass or injury to tribal land from a non-Indian person").

20.     Plaintiff's Complaint raises precisely the same federal question that was at issue in *County of Mono*: Plaintiff, an Indian tribe, seeks to recover from non-Indian defendants alleged damages for harms to tribal lands as well as natural resources, *see e.g.*, Compl. ¶¶ 4.184–88 (alleging damages to tribal lands and natural resources), including tribal trust lands, *see id.* ¶ 2.1 (defining the "Shoalwater Bay Reservation" to include the Shoalwater Bay Tribe's Executive Order Reservation, "together with lands that the United States holds in trust for the Tribe near and contiguous to the Tribe's Executive Order Reservation"); s*ee also Boisclair v. Super. Ct.*, 51 Cal.3d 1140, 1148 (1990) (explaining that "[m]ost," but not all, "Indian lands are owned by the United States and held in trust for the benefit of Indians.").  Specifically, the Complaint seeks "compensatory damages," as well as payment into an abatement fund to "remediate" Plaintiff's "Reservation lands [and] natural resources," to remedy the alleged "existential threats" to the Tribe's "people" and "land" including the "destruction of Tribal natural resources," and interference with Plaintiff's right to occupy and "enjoy . . . [its] property."  Compl. ¶¶ 1.7, 4.186, 5.4, 6.2, 6.3.  Indeed, the Chair of Shoalwater Bay Tribe has justified the

9

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

suit by asserting that Plaintiff must spend "hundreds of millions of dollars . . . to relocate [its] community to higher ground and protect" Plaintiff's "people" and "property."[2]  Moreover, tribal documents such as Plaintiff's operative Hazard Mitigation Plan state that "[t]he Shoalwater Bay Tribe's traditional and current homelands . . . will be affected by rapid climate change."[3]  As such, the "Indian right of possession" is at stake, federal question jurisdiction exists, and removal is proper.  *Cnty. of Mono*, 2021 WL 3185478, at *4–5.

21.     Plaintiff cannot defeat federal jurisdiction here by purporting to assert solely state-law claims.  While the well-pleaded complaint rule ordinarily allows Plaintiff to "avoid federal jurisdiction if a federal question does not appear on the face of the complaint," *Cnty. of San Mateo*, 32 F.4th at 746, federal law completely preempts purportedly state-law claims involving possessory rights of tribes to tribal lands, *Cnty of Mono*, 2021 WL 3185478, at *3 (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393, n.8 (1987)) (describing "state-law complaint" alleging rights in Indian lands as "completely preempted and aris[ing] under federal law"); *see also Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 23 n.25 (1983) (explaining *Oneida I* has a "similar effect" to complete preemption); *Caterpillar Inc.*, 482 U.S. at 393 n.8 (describing the "state-law complaint" in *Oneida I* as "completely preempted and aris[ing] under federal law").

22.     Because Plaintiff's purported state-law claims for alleged injury to tribal lands and natural resources are completely preempted by federal law, those claims necessarily arise under federal law, and removal is proper regardless of how Plaintiff characterizes its claims.  *Cnty. of Mono*, 2021 WL 3185478, at *3.

## V.     THIS ACTION IS ALSO REMOVABLE BECAUSE IT IS BROUGHT BY AN INDIAN TRIBE TO RECOVER FOR ALLEGED INCREASED COSTS OF HEALTH CARE.

23.     Plaintiff's lawsuit is independently removable because it seeks to recoup alleged increased costs of health care provided to tribal members as a result of the purported impacts of global

---

[2] Isabella Breda, *Two PNW tribal nations sue oil companies over costs of climate change*, Seattle Times (Dec. 21, 2023), Dick Decl., Ex. 2.

[3] Shoalwater Bay Tribe Tribal Hazard Mitigation Plan at 37 (2019), Dick Decl., Ex. 3.

NOTICE OF REMOVAL

10

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

climate change.  *See* Compl. ¶¶ 2.1, 4.1, 4.111, 4.186, 5.4, 5.15.  "Congress has unambiguously declared that the federal government has a legal responsibility to provide health care to Indians," stemming "from the 'unique relationship' between Indians and the federal government."  *White v. Califano*, 581 F.2d 697, 698 (8th Cir. 1978).  Under federal law, the federal government "funds a vast array of medical treatment . . . for individual members of Indian Nations [and] does so exclusively by Congressional appropriations and federal monies," including through the Indian Health Service and self-determination contracts with Indian tribes.  *Acoma Pueblo*, 2001 WL 37125252, at *6.  Because health care for tribal members is funded by the federal government pursuant to this federal framework, in many instances it is the federal government—not Plaintiff—that ultimately suffers injury when healthcare services are provided to tribal members injured by tortfeasors.  The reason is simple: the cost of that care was derived from funds appropriated by the United States, not Plaintiff.  Accordingly, whether Plaintiff can establish cognizable injury or possesses authority to seek reimbursement when the costs at issue were borne by the federal government, rather than Plaintiff, necessarily raises "substantial questions of federal law."  *Grable*, 545 U.S. at 312.

24.    *Acoma Pueblo v. American Tobacco Company* is instructive.  There, Indian tribes sued tobacco companies in state court for an alleged deceptive campaign to conceal the risks of smoking, seeking to "recover[] . . . tobacco-related health costs."  2001 WL 37125252, at *1.  Though all claims were pleaded under state law, the defendants removed the case and the district court denied plaintiffs' motion to remand, explaining that "construction of the Indian Health Care Act and statutes intrinsically related will determine whether Plaintiffs have an injury-in-fact"—specifically, whether plaintiffs suffered their own economic injury or had authority to "seek a reimbursement of monies spent on their behalf"— "a central element of every one of Plaintiffs' state law causes of action[] cannot be established without an interpretation of federal law."  *Id.* at *7.  Thus, because—"[r]egardless of how Plaintiffs characterize[d] their several claims"—"'the vindication of a[ny] right under state law necessarily turned on some construction of federal law,'" the claims "ar[o]se under federal law.'"  *Id.* (quoting *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 808 (1986)).

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

25.     Like the tribes in *Acoma*, the Plaintiff here alleges that purported deceptive marketing caused tribal members to suffer injuries, and Plaintiff seeks to recover funds it spent for health care costs.  And as in *Acoma*, whether and the extent to which Plaintiff suffered cognizable injury will require construction of federal statutes and reference to the comprehensive federal scheme governing the funding and provision of Indian health care—an inherently federal inquiry.  "The federal statutory scheme which permits the expenditures in the first place, and not traditional state law remedies, controls when and how funds may be reclaimed, as well as who has standing to reclaim them."  *Id.*  Thus, as in *Acoma*, "[t]he Indian Health Care Act and related law is pertinent not as a defense, but as the only means of deciding whether [Plaintiff] stand[s] in a position to have been harmed, and if harmed, whether [it] may be compensated."  *Id.*

## VI.     THIS COURT HAS JURISDICTION AND REMOVAL IS PROPER.

26.     Based on the allegations in the Complaint, this Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1362, and 1441(a).  Accordingly, removal of this action is proper under 28 U.S.C. §§ 1441(a) and 1446.

27.     The United States District Court for the Western District of Washington is the appropriate venue for removal pursuant to 28 U.S.C. § 1441(a) because it embraces the place where Plaintiff originally filed this case, in the Superior Court of the State of Washington for King County.  *See* 28 U.S.C. § 1441(a).

28.     All Defendants that have been properly joined and served have consented to the removal of the action, *see* Dick Decl. ¶ 4, and there is no requirement that any party not properly joined and served consent to this removal, *see* 28 U.S.C. § 1446(b)(2)(A) (requiring consent only from "all defendants who have been properly joined and served").  Copies of all process, pleadings, and orders from the state-court action being removed to this Court that are in the possession of the Chevron Defendants are attached hereto as Exhibit 1 to the Dick Declaration.  Pursuant to 28 U.S.C. § 1446(a), this constitutes "a copy of all process, pleadings, and orders" received by the Chevron Defendants in the action.

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

1    29.    Upon filing this Notice of Removal, Defendants will furnish written notice to Plaintiff's

2   counsel, and will file and serve this Notice upon the Clerk of Superior Court of the State of Washington

3   in and for King County, pursuant to 28 U.S.C. § 1446(d).

4        Accordingly, Defendants remove to this Court the above action pending in the Superior Court

5   of Washington for King County.

6   Dated: February 6, 2024                  ORRICK, HERRINGTON & SUTCLIFFE, LLP
                                               *s/ Robert M. McKenna*
7                                              ─────────────────────────────────
                                               Robert M. McKenna (WSBA 18327)
                                               rmckenna@orrick.com
8                                              *s/Mark S. Parris*
                                               ─────────────────────────────────
9                                              Mark S. Parris (WSBA 13870)
                                               mparris@orrick.com
10                                             *s/Andrew C. Cook*
                                               ─────────────────────────────────
11                                             Andrew C. Cook (WSBA 34004)
                                               andrew.cook@orrick.com
12                                             401 Union Street, Suite 3300
                                               Seattle, WA 98101
13                                             Telephone: 206.839.4300
                                               Facsimile: 206.839.4301
14
                                               GIBSON, DUNN & CRUTCHER LLP
15                                             *s/Theodore J. Boutrous*
                                               ─────────────────────────────────
16                                             Theodore J. Boutrous, Jr. (*pro hac vice*
                                               forthcoming)
                                               tboutrous@gibsondunn.com
17                                             *s/William E. Thomson*
                                               ─────────────────────────────────
18                                             William E. Thomson (*pro hac vice* forthcoming)
                                               wthomson@gibsondunn.com
19                                             *s/Joshua D. Dick*
                                               ─────────────────────────────────
20                                             Joshua D. Dick (*pro hac vice* forthcoming)
                                               jdick@gibsondunn.com
21                                             333 South Grand Avenue
                                               Los Angeles, CA 90071
22                                             Telephone:  213.229.7000
                                               Facsimile: 213.229.7520
23                                             *s/Andrea E. Neuman*
                                               ─────────────────────────────────
24                                             Andrea E. Neuman (*pro hac vice* forthcoming)
                                               aneuman@gibsondunn.com
25                                             200 Park Avenue
                                               New York, NY 10166
26                                             Telephone: 212.351.3883
27                                             *Attorneys for Defendants Chevron Corporation and*
                                               *Chevron U.S.A. Inc.*
28

NOTICE OF REMOVAL                            13                  GIBSON, DUNN & CRUTCHER LLP
                                                                   333 SOUTH GRAND AVENUE,
                                                                 LOS ANGELES, CA 90071-3197
                                                                         213.229.7000